## Case No. 4,297.

EDWARDS v. The ROBERT F. STOCKTON.

[Crabbe, 580.] [1]

District Court, E. D. Pennsylvania. July 17, 1845.

[1] [Reported by William H. Crabbe, Esq.]

W. G. Smith, for libellants.
W. W. Hubbell and Mr. Ashmead, for respondent.

RANDALL, District Judge. The libel alleges that the sloop Centurion was, on the 11th March last, lying safely and properly moored at the wharf in Delaware City, and within the admiralty and maritime jurisdiction of this court, when the steamer R. F. Stockton approached with great speed, and that, notwithstanding the master of the Centurion held a light upon the outside of his vessel, and hailed the steamer in a loud voice, requesting her to keep off, she ran into the sloop with great force and violence, striking the Centurion on the starboard bow and cutting her down to the water's edge, otherwise injuring her, and reducing the value of her cargo, which was thus prevented from being brought to Philadelphia as soon as it otherwise would have been.

A claim and answer has been filed by Henry L. Gaw, who states that on the 1st May, 1845, and prior to the filing the libel in this cause, he purchased the Stockton without any notice or knowledge of the said alleged collision, and that, being a bona fide purchaser without notice, the steamer is not liable in his possession for any injury she may have done previously to his said purchase. The answer also denies that the collision was occasioned by the fault or negligence of those on board the steamer; alleging that, if any injury was sustained by the Centurion, it was caused solely by the fault and negligence of those on board the sloop in not having proper lights exhibited, and in her being moored in an improper place in the channel or entrance to the Chesapeake and Delaware Canal.

Assuming, for the purposes of this case, that the purchase by Mr. Gaw was bona fide, and without notice of this collision, the question arises whether the steamer remains liable, in his possession, for the damage occasioned by her; supposing her to have been in fault? It is true that the master and owner of an offending vessel may be personally liable for the damages occasioned by the negligence or misconduct of such master, or of those in

charge of the vessel; but it does not follow that the vessel is not also responsible. If, then, the Stockton was liable for this damage, was her liability removed by her subsequent sale to Gaw? In the case of The Mary [Case No. 9,186], which was on a libel for seamen's wages, the libellants shipped, at New York, on a voyage to New Orleans, and back; the vessel remained at New Orleans upwards of a year, when, not obtaining a freight, the seamen were discharged and the vessel sold; the men returned to New York, and the vessel, under her new owners, made a voyage to Liverpool and from there to New York, where she was attached by the former crew. It was held that they were entitled to recover, notwithstanding the intermediate sale of the vessel.

But it is argued that a claim for seamen's wages differs from one like the present, inasmuch as they are a favored class, always allowed a preference over every other claim. In a recent publication on this subject it is stated that "whenever one vessel does damage to another, within the admiralty and maritime jurisdiction, the offending vessel becomes hypothecated to the vessel and cargo sustaining the injury to repair the damages occasioned by the collision, and the injured persons have a lien or privilege upon the guilty property, by the general maritime law of nations, to the exent of the injury sustained." 3 N. Y. Leg. Obs. 4. This seems to be the generally received opinion of courts of admiralty, and in a large majority of cases the proceedings to recover damages are in rem against the vessel whenever she can be reached. In the case of Hale v. Washington Ins. Co. [Case No. 5,916], it was held by Judge Story, that where a loss by collision occurs by the negligence of the master and crew, the ship is primarily liable for damages, and the master or owners personally but collectively responsible. And in the case of Peters v. Insurance Co., 14 Pet. [39 U. S.] 99, it was held, by the supreme court of the United States, that in a loss by collision, without fault on either side, the underwriters were liable for damages which the insured vessel was bound to pay to equalise the loss. The case of The Rebecca [Case No. 11,619] is perhaps more analogous to the present. That was a libel for damages occasioned by the careless and improper manner of stowing ten hogsheads of liquor, shipped on board the Rebecca by the libellant, at New York, to be delivered at Boston, the dangers of the sea only excepted. The goods were stowed on deck and thereby lost. The shipment took place on the 20th March, the vessel being at that time owned by one Chase. A claim was put in by a person named Scott, who averred that Chase, on the 5th April, sold the vessel to a third party, from whom the claimant purchased her, on the 20th December; that in the intermediate time the vessel had been repeatedly at New York, where the libellant resided, without molestation, and therefore was discharged from any liability in his hands. The question is so fully and ably examined in the opinion of Judge Ware, who decided that the lien was not defeated, even by a bona fide sale, before an opportunity for enforcing it, that I deem it only necessary to refer to that case for a full and satisfactory answer to this objection.

I grant that there may be such gross negligence on the part of a claimant as to forfeit his remedy against the vessel, in the hands of an innocent and bona fide purchaser, without notice, but in the present case no such negligence appears. The collision took place at Delaware City on the 11th of March, 1845; the vessel was brought to Philadelphia to be repaired, and until the repairs were finished the extent of damage could not be ascertained. A correspondence or negotiation for a compromise appears to have taken place between the parties, after the repairs were completed, which failed, and on the 5th May, the libel was filed; the purchase by the claimant is alleged to have taken place on the 1st May, which was pending the negotiation for a compromise, and if allowed to take away the libellants' rights must not only have the effect of preventing amicable settlements of disputed claims, which should be encouraged, but would enable a dishonest and insolvent owner of a vessel to avoid all responsibility for her illegal and improper acts.

It only remains, therefore, to consider whether the Stockton was, at and immediately after this collision, liable for the consequences of it. Of this I have, on the evidence before me, no doubt, and shall therefore enter a decree for the libellants.